# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | | |
|---|---|---|---|
| JOHN LEVY, | § | | |
| | § | | |
| Plaintiff, | § | | |
| | § | | |
| v. | § | CASE NO. _____ | |
| | § | | |
| UNUM GROUP, | § | | |
| | § | | |
| Defendant. | § | | |

**EXHIBIT A – DEFENDANTS' INDEX OF STATE COURT MATTERS**

Defendants Unum Group[1] and Unum Life Insurance Company of America ("Unum Life"), in connection with the removal of this case to the United States District Court for the Southern District of Texas, Houston Division, files its index of state court matters, pursuant to Local Rule 81, as follows:

| | **State Court Document** | **Date** |
|---|---|---|
| 1. | Chronological Case History – 295th Judicial District, Harris County, Texas | N/A |
| 2. | Docket Sheet – 334th Judicial District, Harris County, Texas | N/A |
| 3. | Plaintiff's Original Petition | 12-14-2021 |
| 4. | First Set of Interrogatories, Request for Production, Request for Admissions and Request for Disclosure | 12-14-2021 |
| 5. | Request for Issuance of Service on Unum Group | 12-14-2021 |

---

[1] Unum Group is not the proper defendant.  The proper defendant is Unum Life, the insurer for Levy's disability claim. Although Plaintiff John Levy did not identify Unum Life in the style of the case or in the "Parties" section of his Original Petition, he does identify Unum Life in the first paragraph of the Original Petition.  Accordingly, and out of an abundance of caution, Unum Life joins in this Notice of Removal.

---

| 6. | Transfer Order | 12-20-2021 |
|----|----------------|------------|

# EXHIBIT 1

**Chronological Case History**

| Style | LEVY, JOHN vs. UNUM GROUP | | | | |
|---|---|---|---|---|---|
| **Case Number** | 202181359 | **Case Status** | Active - Civil | **Case Type** | Insurance |
| **File Court** | 334 | **File Date** | 12/14/2021 | **Next Setting** | N/A |

| Date | Type | Description |
|---|---|---|
| N/A | SERVICE | **PERSON SERVED:** UNUM GROUP (CORPORATION)BY SERVING ITS REGISTERED AGENT CORPORATION SERVICE COMPANY **SERVICE TYPE:** CITATION CORPORATE |
| 12/14/2021 | DOCUMENT | ORIGINAL PETITION **COURT:** 334 **ATTORNEY:** WILSON, STUART NEIL **PERSON FILING:** LEVY, JOHN |
| 12/20/2021 | ACTIVITY | TRANSFERRED TO HARRIS COUNTY DISTRICT COURT **COURT:** 334 |
| 12/20/2021 | ACTIVITY | TRANSFERRED TO ANOTHER HARRIS COUNTY DISTRICT COURT **COURT:** 334 |
| 12/20/2021 | ORDER | ORDER TRANSFERRING CASE TO ANOTHER DISTRICT COURT SIGNED **COURT:** 334 **PGS.** 1 |

# EXHIBIT 2

# 2021-81359

**COURT:** 334th

**FILED DATE:** 12/14/2021

**CASE TYPE:** Insurance



---

**LEVY, JOHN**

Attorney: WILSON, STUART NEIL

**vs.**

**UNUM GROUP**

---

| Docket Sheet Entries | |
|---|---|
| Date | Comment |
| 12/20/2021 | TRANX - ORDER TRANSFERRING CASE TO ANOTHER DISTRICT COURT SIGNED |

# EXHIBIT 3

12/14/2021 4:39 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 60024806
By: Courtni Gilbert
Filed: 12/14/2021 4:39 PM

CAUSE NO. _____

| | | |
|---|---|---|
| JOHN LEVY | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| UNUM GROUP | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Comes now, JOHN LEVY. (hereinafter referred to as "PLAINTIFF" or "Mr. Levy"), complaining of Defendant, UNUM GROUP, (F/K/A and A/K/A UNUM CORPORATION and UNUM LIFE INSURANCE COMPANY OF AMERICA hereinafter referred to as "UNUM"), and for cause of action would show unto this Court the following:

### 1.    Jurisdiction/Discovery Level

This Court currently has jurisdiction over the parties being that the causes of action arose in Harris County, Texas.

Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### 2.    Parties

Plaintiff, JOHN LEVY, is an individual residing in Houston, Harris County, Texas.

UNUM GROUP, is a corporation authorized to do business in Texas, and may be served by serving Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

### 3. FACTS

a.    Mr. Levy purchased a disability income insurance policy (policy number LAD060525) from UNUM with an effective date of December 12, 1988.

b.    UNUM requested and Mr. Levy granted UNUM direct access and authority to draft all premiums from Mr. Levy's checking account leaving UNUM responsible for the collection of all of Mr. Levy's premiums.

c.    Mr. Levy first became disabled on July 13, 1991 from a diagnosis of depression.

Original Petition                                                                                     Page 1

d.      On October 21, 1991. Mr. Ruble's notes from that day, written on November 1, 1991 state the following:

> *"I again discussed the insured diagnosis versus disability. As we had previously discussed, I again explained that we do not pay benefits based on diagnosis alone. There must be a disabling condition for us to pay benefits. In this instance, we would consider depression a disabling factor, but this is not what we would consider a long term disability. Since he had indicated his financial problems were a stress factor, I then discussed with him return to work benefits equivalent to three months of disability benefits. He could then use this money to eliminate his financial stress factors and use the MONY benefits for his day to day needs, such as rent and/or auto loan payments.*
>
> *After some discussion and explanation, assuring him that he was not signing a release giving up any further rights and benefits, he then accepted the offer.``*
>
> *"After discussing the matter with the insured, I then issued a Field Draft in the amount of $7,605 ($2,535/mo x 3 months), representing three months of benefits."*
>
> *"A check from the home office will be forwarded directly to the insured. Since the payment represents benefits through 1/12/1992, waiver of premium should be approved accordingly"*

*UNUM's claim summary notes on states the following:*

> *"During the field visit the insured reported that his main problems, at that time, were related to Depression and being unable to concentrate at work. Mr. Levy agreed to a three month AP&C during the field visit. Shortly thereafter a check was issued by the home office and the claim closed."*

e.      Mr. Ruble's and UNUM's home office were clear in that once Mr. Levy accepted the ninety (90) day lump sum of "return to work benefit" his claim for depression and Waiver of Premiums period would end and the claim for depression closed effective January 12, 1992.

f.      UNUM employee Joan Garish closed Mr. Levy's claim for depression on January 12, 1992.

g.     On November 5, 1991 UNUM faxed Mr. Levy a letter stating:

*"To assure your income protection is adequate, your next automatic plan withdrawal will include premium for a guaranteed increase in your Monthly Disability Income benefit of $152. This guaranteed increase is available at a cost of only $6.53/month.*

*The total new withdrawal amount for your policy will be $102.12. For your convenience, we will begin automatic withdrawals for this amount from your checking account in December."*

*"If you do not wish to take advantage of this valuable offer, please call us at 1-800-2278138 "*

h.     UNUM's letter was explaining that Mr. Levy's prior premiums of $95.59 would be increased by $6.53 for a total of $102.12 establishing an additional guarantee increase by $152.00 in benefits increasing Mr. Levy's Maximum Disability Benefits from $25.35 to $2,687.00.

i.     Subsequently, UNUM drafted Mr. Levy's checking account for premiums in the amount of $102.12, beginning January 12, 1992 when Mr. Levy's claim for depression had been closed, through March 14, 1992.   UNUM drafted premium of $102.12 from Mr. Levy's checking account for the months of January, February and March of 1992.  The $102.12 premium included $95.59 for Mr. Levy's original premium plus an additional $6.53 for the guaranteed $152.00 increase in Mr. Levy's Monthly Disability benefits, increasing Mr. Levy's Maximum Disability Benefit from $2,535.00 to $2,687.00, with an effective of December 12, 1991.

j.     UNUM's internal claim notes stated the following:

*"Mr. Levy's claim for depression was no longer a psych claim and that the diagnosis needed to be changed to AIDS."*

k.     On February 11, 1992, Dr. Steve Martinez, Mr. Levy's physician, wrote a letter explaining that Mr. Levy had been diagnosed with Kaposi's Sarcoma and AIDS and had become permanently disabled on January 31, 1992.

l.     January 31, 1992 marked the onset date of Mr. Levy's second period of disability.

m.     Successive Disabilities are defined on page 8 of the policy.

*"A period of disability which follows a past period of disability will be considered a separate period of disability only if the subsequent period of disability is:*

*1. caused by a different injury or sickness than the one which caused the past period of disability; or*

*2. separated from the past period of disability by at least six months during which the insured is able to return to work full time in his regular occupation."*

n.     Mr. Levy's second disability claim clearly satisfied the requirement of #1 above because Mr. Levy had been disabled "for a different injury or sickness"  In this case Depression vs HIV/AIDS. It is not a requirement to satisfy both requirement #1 and #2; rather, an insured must satisfy one or the other.

*On September 29, 2003 an internal UNUM memo stated:   Need for file*

*Diagnosis Date of Onset*

*Depression (major) 1991*

*Full-blown AIDS 1/20/1992*

*Kaposi's Sarcoma 2/1992*

o.     On February 26, 1992, UNUM sent Mr. Levy a letter acknowledging his second period of disability explaining that he would again be entitled to a second Waiver of Premium Benefits, stating:

*"As a result of your disability, you are entitled to waiver of premium benefits until you are able to work full time in your occupation. Accordingly, we are refunding a prorata portion of your monthly pre-paid premium from January 12, 1992 to March 14, 1992.*

*Beginning the day you recover, we will again bill you for the period from the date you recovered to your next premium due date."*

p.     UNUM's prorata refund included $6.81 for only three days of premiums in January of 1992, and full premium refunds of $102.12 for February and March of 1992 which established

that Mr. Levy UNUM policy was active and in full force between January 12, 1992 when UNUM closed Mr. Levy's first disability claim and January 31, 1992 when UNUM approved Mr. Levy's second claim.

q.       However, when UNUM began paying Mr. Levy's benefits for his second disability claim after January 31, 1992, UNUM did not increase Mr. Levy's benefits to $2,687.00.  UNUM had guaranteed the increase.  Despite the fact that Mr. Levy had paid for the increase and guaranteed amount, UNUM only paid him the original amount of $2,535.00.  This resulted in Mr. Levy being paid $152.00 less per month than UNUM required to pay.

r.       Mr. Levy reports he has contacted UNUM multiple times over the years regarding the additional $152.00 benefit and was always given a standard answer that the $152.00 benefit was not available to him due to the "Benefit Indexing Provision" found on page 8 and 9 of the policy.  However, the Benefit Indexing Provision is only available "except during disability" which is inapplicable to Mr. Levy as he currently on a disability claim. It also has nothing to do with the $152.00 Automatic Increase Benefit found on page 3 of the policy.

s.       Then, on July 8, 2009, Mr. Levy reports that he contacted UNUM again and spoke to Karen Potter, a Benefit Center Coordinator, about why he was not receiving the $152.00  Benefit.  Ms. Potter repeated the same "Benefit Indexing Provision" in response.

t.       This is confirmed by an internal UNUM note between Ms. Potter and Mr. Griffin  on July 8, 2009 where Mr. Griffin stated:

> *"I called the insured and explained that the Automatic Increase of $152.00 didn't take effect until 12/12/91 which was after his date of disability of 7/13/91, therefore he isn't eligible to receive that benefit from this claim as his claim has been continuous."*

Mr. Griffin's explanation was false and misleading. There are multiple documents, including documents between and amongst UNUM, its employees, officers and directors that confirmed Mr. Levy had two separate disability claim periods.  The first claim ending January 12, 1992 and the second claim beginning January 31, 1992.

u. April 17, 2018, Daniel Pokraka, a Senior Disability Benefit Specialist, faxed a letter in response to question from Spencer Edwards, Mr. Levy's prior attorney, regarding the $152.00 benefit.

Mr. Pokraka wrote explaining:

> *"We have reviewed our records and note that Mr. Levy called us on July 8,2009 and wanted to speak with a manager  regarding why he is not receiving the additional benefit of $152 and the Consumer Pricing Index (CPI-U). Our manager spoke to Mr. Levy and advised that his disability date was 7/13/1991 and the additional benefit of $152 was not effective until December 12, 1992.  Therefore, he was not eligible to receive that benefit on his current claim."*

Mr. Pokraka's explanation mirrored the explanation of Mr. Griffin.

v. On June 14, 2018, Mr. Pokraka sent another letter which formally denied Mr. Levy of the Automatic Increase Benefit of $152.00.

w. This denial letter relied on the same false facts that Mr. Griffin and Mr. Pokraka had given Mr. Levy, that the Automatic Increase of $152.00 didn't take effect until December 12, 1991 which was after Mr. Levy's date of disability of July 13, 1991.  Therefore, it was and is UNUM's position that Mr. Levy wasn't eligible to receive the additional $152.00 benefit because his claim has been continuous.

x. The letter gave instructions on how to appeal the denial if there was new evidence to present. Mr. Levy reports that, at that time, he was unaware of any new evidence in which to file an appeal and as a result did not appeal.

y. Mr. Levy had satisfied all of the Policy Provisions which would have qualified him for the additional $152.00 in benefits beginning on or about April 15, 1992 through to the present day.

z. Mr. Levy could not have been aware of, or known about UNUM's internal communications and documents created between and amongst UNUM, its employees, officers and directors or that he had been damaged until he received his UNUM file on or about August 10, 2020.

aa.    Besides the $152.00 per month increase there is an Automatic Increase in Benefit to which Mr. Levy is entitled pursuant to the terms and conditions of the policy.

bb.    The Benefit Indexing Provision, on page 8 the policy, where it states:

*"On each policy anniversary until the policy anniversary when the insured's age is 55, except during disability, you will automatically have the opportunity to increase the Maximum Disability Benefit by the indexed amount provided that:*

*1. on each fifth policy anniversary, we determine based on evidence submitted that the insured's total coverage then in effect does not exceed our issue and participation limits for the income which he is then earning; and*

*2. you have not refused the opportunity to increase the insured's coverage in two consecutive years."*

cc.    Neither of these qualification apply to Mr. Levy because his Benefit Indexing Provision occurred in the first and second year.

dd.    According to policy provisions the Indexed Amount is defined on page 9 as:

*"The increase available each year will be the percent change in the CPI-U between November 30 in the previous calendar year and November 30 of the calendar year before that one or 8%, whichever is smaller, times the current Maximum Disability Benefit for the policy. If the change in the CPI-U is less than 4%, the increase available will be 4% of the current Maximum Disability Benefit."*

ee.    Mr. Levy's policy effective date was December 14, 1988 leaving UNUM responsible to automatically increase Mr. Levy benefits by the indexed amount on the anniversary of his policy, December 14, 1989 and December 14, 1990.

ff.    As such, UNUM was entirely responsible to automatically offer Mr. Levy the indexed increase in benefits and to draft Mr. Levy's checking account for the increased premiums as UNUM had done in the past when they presented an offer to increase Mr. Levy's benefits and subsequently drafted his checking for the increased premiums.  Mr. Levy had no responsibility other than to contact UNUM in the event he chose **NOT** to accept the increase in benefits.

gg.    Mr. Levy never received notification of his eligibility for the Automatic Benefit Indexing Provision.  In review of Mr. Levy's file sent to him on August 10, 2020 no letters or

documents were found in which UNUM had offered or sent to Mr. Levy the opportunity to reject receiving the Automatic Increase of Benefit referred to above.

hh.    If UNUM had complied with the terms of the Benefit Indexing Provision of the policy, they would have offered and withdrawn premiums on the anniversary of the policy in 1989 - a CPI-U increase of 5.6% or $141.96 added to the original base benefits of $2,535.00 for an increased Maximum Benefit of $2,676.96 - followed by the next anniversary of the policy in 1990 - when UNUM would have offered and withdrawn premiums for another CPI-U increase of 7.9% or $211.48  - for a total Maximum Benefit $2,888.44.  Then on December 12, 1991, UNUM should have added another increase of $152.00 (Automatic Increase Benefit), which is stated in the Policy on page 3, creating a new Maximum Benefit of $3,040.44.

ii.    Since UNUM only paid Mr. Levy $2,535.00 per month for his second claim, while actually being eligible to receive $3,040.44 per month, UNUM owes Mr. Levy an additional $505.44 per month beginning after the 60-day elimination period of Mr. Levy's total disability claim for AIDS on January 31, 1992, plus an 18% per annum interest penalty on the additional $505.44 per month.  As of August 2021, $505.44 per month from March 31, 1992 (beginning of benefits after the sixty (60) day elimination period) through August 31, 2021 = $4,780,827.29.

jj.    It is unconscionable that UNUM didn't allow Mr. Levy to exercise these two provisions which were his right under his disability Policy No. LAD060525.  Its unconscionable for UNUM, its employees officers and directors to have taken advantage of Mr. Levy's lack of lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

4.    **Breach of Contract**

PLAINTIFF incorporate herein Sections 1 through 3 above as if set forth herein verbatim. Defendant, UNUM breached its duty to perform and provide Automatic Increases in Benefits pursuant to Plaintiff's Disability Policy No. LAD060525.  More specifically, pursuant to the terms of the disability policy, Plaintiff was to receive Automatic Increases in Benefits totally $505.00 per month beginning March 1992.

As a result of UNUM's breach of agreement, PLAINTIFF has suffered damages and is entitled to recover damages in the amount of at least $5,000,000.00.

Furthermore, as an indirect and consequential result of UNUM's breach of agreement, PLAINTIFF has been damaged in the amount of at least $1,500,000.00.

**5.     Negligence/Negligent Supervision**

PLAINTIFF incorporates herein Sections 1 through 4 above as if set forth herein verbatim. Additionally and alternatively, but without waiving the foregoing, Plaintiff would show that UNUM its employees, officers and directors, had a duty of good faith and fair dealing with Plaintiff. These Defendants were independently negligent in supervising and performing their duty of good faith and fair dealing for and on behalf of PLAINTIFF in that they:

a. Established policies and procedures with respect to denying Mr. Levy's claims afforded him by his UNUM disability policy.

b. UNUM and its, employees, officers and directors failed to insure UNUM's performance relating to the Automatic Increase in Benefits Mr. Levy was to receive pursuant to the Disability Policy No. LAD060525.

c. UNUM had the duty of good faith and fair dealing to communicate to Mr. Levy that he was entitled to receive Automatic Increases in Benefits upon which they failed.

d. UNUM, its employees, officers and directors failed to provide Mr. Levy with communications and documents contained in his UNUM file which admitingly confirmed Mr. Levy's entitled to receive the Automatic Increases in Benefits.

e. UNUM, its employees, officers and directors failed to follow the requirements of Mr. Levy's UNUM Policy No. LAD060525 giving him the opportunity to reject receiving Automatic Increases in Benefits as offered in Page 8 and 9 of his UNUM Disability Policy No. LAD060525

UNUM and its, employees, officers and directors independently had a duty as described above. As a result of the independent negligence and independent negligent supervision, PLAINTIFF have suffered damages and is entitled to recover damages in the amount of at least $5,000,000.00.

Additionally, PLAINTIFF would show that UNUM its, employees, officers and directors acts and/or omissions were grossly negligent, entitling PLAINTIFF to exemplary or punitive damages in the amount of at least $5,000,000.00.

**6.**      **Fraud**

PLAINTIFF incorporates herein Sections 1 through 5 above as if set forth herein verbatim. Additionally and alternatively, but without waiving the foregoing, PLAINTIFF would show that UNUM engaged in a continuing independent course of conduct by which they made false, material representations and omission of material facts to PLAINTIFF with regard to PLAINTIFF being entitled to receive Automatic Increase in Benefits pursuant to his Disability Policy No. LAD060525.

These independent material representations, material promises, and omissions of material facts were falsely made. UNUM knew that the material representations, material promises and omissions of material facts were false when made, and made or omitted by them with reckless disregard of their truth or falsity. They were made by UNUM with the intention of inducing PLAINTIFF to act on these material representations, material promises and omissions of fact. PLAINTIFF justifiably relied on those false material representations and omissions of material fact. As a result of UNUM's fraud, PLAINTIFF has suffered substantial damage and is entitled to recover damages in the amount of at least $5,000,000.00.

UNUM made the false representations, false promises, and omissions of material fact referred to above, without PLAINTIFF actual awareness of their falsity and the false material representations and false material facts were of a wanton and malicious nature that justifies the imposition of punitive damages in the amount of at least $5,000,000.00.

**7.**      **Declaratory Judgment**

PLAINTIFF incorporates herein Sections 1 through 6 above as if set forth herein verbatim. Additionally and alternatively, but without waiving the foregoing, an actual justiciable controversy exists between the parties regarding whether or not the terms and conditions of Mr. Levy's disability policy entitled him to Automatic Increases in Benefits. Plaintiff requests that the Court enter a judgment that the terms and conditions of Mr. Levy's Disability Policy No. LAD060525 are automatically enforceable to provide Mr. Levy Automatic Increases in Benefits.

**8.**      **Deceptive Trade Practices of UNUM**

PLAINTIFF incorporates herein Sections 1 through 7 above as if set forth herein verbatim. Additionally and alternatively, but without waiving the foregoing, PLAINTIFF is a consumer as

that term is defined in §17.45(4,5) of the Texas Business and Commerce Code-Consumer Protection Act ("DTPA"), and UNUM is engaged in trade and commerce, as that term is defined in §17.45(6) of the DTPA. At all times material hereto, UNUM was engaged in the business of selling disability insurance and held themselves out to the public as having knowledge or skill identifiable to that business. PLAINTIFF brings this cause of action pursuant to §17.41 et seq. of the DTPA. In performing their independent acts or omissions as set forth above, which are incorporated herein by reference, UNUM held itself out to PLAINTIFF that its goods and services as having a specific quality of the goods and services that they were to provide to PLAINTIFF. Moreover, UNUM represented that the services and goods it provided would have characteristics, benefits and uses which it did not have, and that the services and goods it provided would be of a particular standard, quality or grade, which they were not. UNUM held itself out to be a corporation authorized to do business in the State of Texas. UNUM's actions were unconscionable in that there is a great disparity between what was paid and what was received by PLAINTIFF. UNUM and its, employees, officers and directors therefore violated the DTPA, including without limitation §17.46(b), and §17.50(a)(1), (2) and (3). Moreover, UNUM's actions and failures were done knowingly and with actual knowledge of the falsity and deceptiveness of their acts and were of such nature as to be false, misleading and deceptive. UNUM's actions were the proximate cause of PLAINTIFF's damages. Furthermore, UNUM is liable for additional damages as provided by §17.50(b) (1) of the DTPA. As a result, PLAINTIFF has suffered damages in at least the amount of $5,000,000.00. PLAINTIFF is also entitled to recover additional damages as delinated in the Texas Deceptive Trade Practices Act.

9. **Violation of Texas Insurance Code**

In accordance with the following Texas Insurance Code:

(a) *Except as provided by Subsection (c), if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees. Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law.*
(b) *If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.*

*If an action to which Chapter 542A applies, if an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy, in addition to the amount of the claim, simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees. Nothing in this subsection prevents the award of prejudgment interest on the amount of the claim, as provided by law. Interest awarded under this subsection as damages accrues beginning on the date the claim was required to be paid.*

UNUM is also in violation of Texas Insurance Code Section 541.061 Misrepresentation of Insurance Policy which states it is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

1. Making an untrue statement of material fact
2. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact

As such, the actions of UNUM resulted in Mr. Levy suffering damages in the amount of $5,000,000.00. In addition, Mr. Levy is entitled to recover interest of 18% on the unpaid Automatic Increases of Benefits beginning March 1992 and afford him in under sections of the Texas Insurance Code described above.

### 10. <u>Texas Rule Of Civil Procedure 197 First Set Of Interrogatories</u>

Defendants, are hereby requested to prepare and to serve responses to First Set of Interrogatories in accordance with Texas Rule of Civil Procedure 196, attached hereto.

### 11. <u>Texas Rule Of Civil Procedure 196 Request For Production</u>

Defendants, are hereby requested to prepare and to serve responses to Request for Production in accordance with Texas Rule of Civil Procedure 196, attached hereto.

### 12. <u>Texas Rule Of Civil Procedure 198  Request For Admissions</u>

Defendants, are hereby requested to prepare and to serve responses to Request for Admissions in accordance with Texas Rule of Civil Procedure 198, attached hereto.

### 13. <u>Texas Rule Of Civil Procedure 194 Request For Disclosure</u>

Defendants, are hereby requested to prepare and to serve responses to Request for Disclosure in accordance with Texas Rule of Civil Procedure 194, attached hereto.

**14.     Attorney's Fees and Expenses**

It was necessary for PLAINTIFF to secure the services Stuart N. Wilson, of Wilson & Associates, P.C., licensed attorneys to prepare and prosecute this suit. PLAINTIFF will show that demand will have been made upon UNUM and its, employees, officers and directors within thirty (30) days of the trial of this case pursuant to Texas Civil and Practices Remedies Code, Section 38.001 et. seq.. PLAINTIFF would request this Court award PLAINTIFF reasonable attorney's fees and costs pursuant to Texas Civil Practice and Remedies Code, Section 38.001 et. seq., the Texas Deceptive Trade Practices Act, and the Texas Insurance Code.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF requests that UNUM its, be cited to appear and answer herein, and that upon final trial of this cause, PLAINTIFF has judgment against UNUM for:

a.     actual and additional damages as plead for above;

b.     punitive and exemplary damages as plead for above;

c.     reasonable attorney's fees;

d.     costs of court;

e.     attorney's fees and costs on appeal;

f.     pre-judgment and post-judgment interest as provided by law; and

g.     such other and further relief to which PLAINTIFF may be justly entitled.

Respectfully submitted,

WILSON & ASSOCIATES, P.C.

*/s/ Stuart N. Wilson*

STUART N. WILSON
TBC #21723300
2100 West Loop South, Suite 1125
Houston, Texas 77027
Phone No.: (713) 479-9700
Fax No.:   (713) 871-9820
Service Email – stuartwilson@swilsonpc.com
**ATTORNEY FOR PLAINTIFF**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Anissa Zamora on behalf of Stuart Wilson
Bar No. 21723300
azamora@swilsonpc.com
Envelope ID: 60024806
Status as of 12/15/2021 8:38 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stuart Neil Wilson | 21723300 | stuartwilson@swilsonpc.com | 12/14/2021 4:39:34 PM | SENT |

# EXHIBIT 4

12/14/2021 4:39:34 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 60024806
By: GILBERT, COURTNI N
Filed: 12/14/2021 4:39:34 PM

CAUSE NO. _____

| | | |
|---|---|---|
| JOHN LEVY | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| UNUM GROUP | § | _____ JUDICIAL DISTRICT |

---

## FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION

## AND REQUEST FOR ADMISSIONS

---

TO:    UNUM Group,

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, **JOHN LEVY, ,** request that *UNUM Group,* produce for inspection and copying the items described below, at the time and place set out below.

Under rules 190, 196, 197 and 198 of the Texas Rules of Civil Procedure, you are required to answer in complete detail and in writing each of the attached interrogatories, sign your answers to the interrogatories, swear to the truth of your answers before a notary public or other judicial officer as required by rules 191.3(a) and 197.2(d) of the Texas Rules of Civil Procedure, and deliver a complete, signed, and notarized copy of your answers to the undersigned attorney within 30 days following service of this request.  If you fail to comply with the requirements above, the Court may order sanctions against you in accordance with the Texas Rules of Civil Procedure.

## 1.    DEFINITIONS

"**UNUM"** refers to and is intended to include *UNUM Group, UNUM Insurance Company, and UNUM Life Insurance Company of America,*  your employees, and/or your agents, either individually or as a representative of any corporation, association, or partnership, as the case may be, as well as any testifying expert witnesses retained by you or retained on your behalf relating to this litigation and any consulting experts whose work product has been reviewed by, relates to, or forms the basis, either in whole or in part, of the mental impressions and opinions of any testifying experts.

"**Identity** and **location**" means the person's name and present or last known address and telephone number.  If any of the above information is not available, state any other means of identifying the individual.

**"Person"** includes and is intended to mean any natural person or the representative of any company, firm, corporation, association, business trust, partnership, limited liability partnership, joint venture, proprietorship, or any other form of business entity.

**"Entity**" or "**entities**" includes and is intended to mean any nonpublicly traded -

a.      corporation;
b.      company;
c.      limited liability company;
d.      firm;
e.      association;
f.      trust;
g.      business trust;
h.      partnership;
i.      limited partnership;
j.      family limited partnership;
k.      limited liability partnership;
l.      joint venture;
m.      proprietorship; or
n.      other form of business entity.

**"Relates to"** means in whole or in part constitutes, contains, concerns, embodies, relates, analyzes, identifies, states, refers to, deals with, or in any way pertains to.

**"Item," "document**," or **"documents"** includes, but is not limited to, each tangible thing, recording, or reproduction of any visual or auditory information, including but not limited to papers, e-mails, text messages, notes, drafts, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and data compilations, however made, whether handwritten, typewritten, or printed material, drafts, duplicates, carbon copies, photocopies, internal memorandum and all other copies.

"**Mr. Levy**" refers to JOHN LEVY.

### Instructions regarding Interrogatories

All information that is not privileged that is in the possession of UNUM, their attorney, investigators, agents, and consulting experts, as defined in the Texas Rules of Civil Procedure, employees, or other representatives of Petitioner is to be divulged. Possession, custody, or control of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to that of the person who has physical possession of the item.

### Option to Produce Records - Interrogatories

If the answer to an interrogatory may be derived or ascertained from public records, from your business records, or from a compilation, abstract, or summary of your business records, and

First Set of Interrogatories, Request for Production
And Request for Admissions

the burden of deriving or ascertaining the answer is substantially the same for Respondent as for you, you may answer the interrogatory by specifying and, if applicable, producing the records or compilation, abstract, or summary of the records. The records from which the answer may be derived or ascertained must be specified in sufficient detail to permit Respondent to locate and identify them as readily as you can. If you have specified business records, you must state a reasonable time and place for examination of the documents. You must produce the documents at the time and place stated, unless otherwise agreed by the parties or ordered by the court, and must provide Respondent a reasonable opportunity to inspect them.

If an interrogatory calls for an answer that involves more than one part, each part of the answer must be clearly set out so that it is understandable. You must precede your answer to each separate interrogatory with the question constituting the separate interrogatory.

## 2. <u>INSTRUCTIONS</u>

All information responsive to this request that is not privileged that is in your possession, custody, or control is to be produced.

"Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession of the item that is equal or superior to that of the person who has physical possession of the item.

A party may obtain discovery of the existence, description, nature, custody, condition, location and contents of documents and tangible things (including papers, e-mails, text messages, notes, drafts books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and date compilations) that constitute or contain matters relevant to the subject matter of the action. A person is required to produce any documents or tangible things and all that are within the person's possession, custody or control. Possession, custody, or control includes constructive possession such that you need not have actual physical possession. As long as you have a superior right to compel production from a third party (including an agency, authority, or representative), you have possession, custody or control.

If any of this information is solely in electronic or magnetic form, you must produce this information by providing Petitioner with this information on CD-ROM computer disks formatted for IBM-compatible computers with a notation identifying the computer program (including version identification) necessary to access the information.

## 3. <u>TIME PERIOD</u>

The discovery requested relates to the period from January 1, 1988 through to the present date, unless otherwise indicated.

Page | 3

First Set of Interrogatories, Request for Production
And Request for Admissions

**4.      DOCUMENTS TO BE PRODUCED**

All items set forth in this Request for Production are to be produced for inspection, examination, and copying within fifty (50) days following service of this request at the law firm of Wilson & Associates, P.C., 2100 West Loop South, Suite 1125, Houston, Texas 77027. You must organize and bates label to correspond with the categories in this request.

**5.      AMENDMENT OR SUPPLEMENTATION OF RESPONSE**

If you learn that your response to this request was incomplete or incorrect when made or that, although it was complete and correct and made, it is no longer complete and correct, you must amend or supplement the response –

1.      to the extent that the request seeks the identification of persons with knowledge of relevant facts, trial witnesses, or expert witnesses, and

2.      to the extent that the request seeks other information, unless the additional or corrective information has been made known to the other parties in writing, on the record at a deposition, or through other discovery responses.

You must make amended or supplemental responses reasonably promptly after you discover the necessity for such a response.

**6.      CONTENT OF RESPONSE**

With respect to each item or category of items, you must state objections and assert privileges as required by the Texas Rules of Civil Procedure and state, as appropriate, that -

1.      production, inspection, or other requested action will be permitted as requested;

2.      the requested items are being served on UNUM with the response;

3.      production, inspection, or other requested action will take place at a specified time and place, if you are objecting to the time and place of production; or

4.      no items have been identified - after a diligent search - that are responsive to the request.

A party may obtain discovery of the existence, description, nature, custody, condition, location and contents of documents and tangible things (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, data, and date compilations) that constitute or contain matters relevant to the subject matter of the action.  A person is required to produce any

First Set of Interrogatories, Request for Production
And Request for Admissions

documents or tangible things and all that are within the person's possession, custody or control. Possession, custody, or control includes constructive possession such that you need not have actual physical possession.  As long as you have a superior right to compel production from a third party (including an agency, authority, or representative), you have possession, custody or control.

## NOTICE - RULE 193.7

All documents you produce in discovery may, or will, be used at trial or any hearing and are therefore authenticated under Rule 193.7.

## NOTICE - RULE 198

Pursuant to Rule 198 of the Texas Rules of Civil Procedure, the UNUM, is also notified to specifically admit or deny the facts requested as set forth in Respondent's First Request of Admissions. A failure to specifically answer any request, or an evasive answer to any request, will be taken as an admission of truth of such request.

Respectfully submitted,

**WILSON & ASSOCIATES, P.C.**

/s/ Stuart N. Wilson

STUART N. WILSON
TBC #21723300
2100 West Loop South, Suite 1125
Houston, Texas  77027
Phone: (713) 479-9700
Facsimile: (713) 871-9820
**ATTORNEY FOR PETITIONER**

Page | 5

First Set of Interrogatories, Request for Production
And Request for Admissions

## FIRST SET OF INTERROGATORIES,
## REQUEST FOR PRODUCTION AND REQUESTS FOR ADMISSIONS

**Request for Production of Documents No. 1**

True and correct copy of all documents which indicate the Reserve and/or Reserves established for Mr. Levy's UNUM Disability Policy No. LAD060525 from January 1, 1988 to the present.

**RESPONSE:**

**Request for Admission No. 1**

Admit or Deny that UNUM received a request to viaticate Mr. Levy's Disability Policy No. LAD060525.

**RESPONSE:**

**Interrogatory No. 1**

State whether or not UNUM agreed to viaticate Mr. Levy's UNUM Policy No. LAD060525.

**RESPONSE:**

**Request for Production of Documents No. 2**

True and correct copies of all UNUM documents which UNUM relied on to deny Mr. Levy's request for UNUM to viaticate his UNUM Policy No. LAD060525.

**RESPONSE:**

**Interrogatory No. 2**

If UNUM chose to deny Mr. Levy's request to have his Disability Policy No. LAD060525 viaticated then provide each and every reason for the denial.

**ANSWER:**

**Request for Production of Documents No. 3**

True and correct copies of all documents including but not limited to all emails and communications of any sort or kind between and amongst all UNUM employees, officers and directors which relate and/or pertain to Mr. Levy and his UNUM Policy No. LAD060525 from January 1, 1988 to the present.

**RESPONSE:**

Page | 6

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 2**

Admit or Deny that UNUM from January 1, 1992 to the present notified its shareholders that Mr. Levy had claims against UNUM pertaining to UNUM's failure to provide Mr. Levy with Automatic Increases in Benefits as afforded in his UNUM Policy No. LAD060525.

**RESPONSE:**

**Interrogatory No. 3**

If Request for Admission No. 2 is denied state each and every reason why UNUM failed to inform its shareholders of Mr. Levy's claims to receive Automatic Increases in Benefits as provided for in his UNUM Policy No. LAD060525.

**ANSWER:**

**Request for Production of Documents No. 4**

True and correct copies of all documents which relate or pertain to the gross income of UNUM.

**RESPONSE:**

**Request for Production of Documents No. 5**

True and correct copies of all documents that relate or pertain to the net worth of UNUM.

**RESPONSE:**

**Request for Admission No. 3**

Admit or Deny that UNUM has policies, procedures and/or guidelines to accept or deny a claims made by an insured of an individual UNUM disability policy for the period January 1, 1995 to the present.

**RESPONSE:**

If Response to Request for Admission No. 3 is admitted, state who with UNUM established the policies, procedures and guidelines for UNUM to accept and/or deny claims made by insureds owning individual disability policies for the period January 1, 1995.

**ANSWER:**

**Interrogatory No. 5**

If Response to Request for Admission No. 3 is admitted, state fully the policies, procures and guidelines for UNUM to accept and/or deny claims made by insureds owning individual disability policies relating or pertaining to Automatic Increases in Benefits for the period January 1, 1995.

**ANSWER:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Production of Documents No. 6**

True and correct copies of all documents which relate and/or pertain to policies, procedures and guidelines for UNUM to accept or deny claims made by insured owning individual disability policies for the period January 1, 1995 to the present.

      **RESPONSE:**

**Request for Production of Documents No. 7**

True and correct copies of all documents which relate and/or pertain to lawsuits filed against UNUM, and/or its employees, officers, directors which relate or pertain to their denial of claims to receive Automatic Increase of Benefits by those insureds that own an individual disability policy for the period January 1, 2015 to the present.

      **RESPONSE:**

**Interrogatory No. 6**

State each and every reason why UNUM failed to provide Mr. Levy with Automatic Increases in Benefits per UNUM Policy No. LAD060525

      **ANSWER:**

**Request for Admission No.  4**

Admit or Deny that the documents found in the link: https://www.dropbox.com/sh/om4oxtmkbwjmyuf/AAAnxsBhhHS_kJ2zqrAcPnMKa?dl=0  are true and correct copies of UNUM's business records relating to Mr. Levy's UNUM Policy No. LAD060525.

      **RESPONSE:**

**Interrogatory No. 7**

State each and every reason why UNUM and its employees, officers and directors failed to provide Mr. Levy with the internal documents identified in 3. (e) (f) (i) (j) (n) above prior to his request to receive his full and complete file.

      **ANSWER:**

**Interrogatory No. 8**

For those employees, officers and directors who have been employed by UNUM from 2000 to present the salary, bonuses, benefits, stock options, stock grants, for each and every person listed below:

      Theodore H. Bunting, Jr.
      Susan L. Cross
      Susan D. DeVore
      Joseph J. Echevarria

First Set of Interrogatories, Request for Production
And Request for Admissions

Cynthia L. Egan
Kevin T. Kabat
Timothy F. Keaney
Gloria C. Larson
Richard P. McKenney
Ronald P. O'Hanley
Francis J. Shammo
Richard P. McKenney
Steven A. Zabel
Michael. Q. Simonds
Liz Ahmed
Timothy G. Arnold
Puneet Bhasin
Lisa G. Iglesias
Martha D. Leiper
Chrisopher W. Pyne
Mark P. Till
Karen Potter
Joseph Griffin
Rick Ruble
Daniel Pokraka

**ANSWER:**


**Request for Admission No. 5**

Admit or Deny that UNUM sent notification to Mr. Levy that he was entitled to Automatic Increase in Benefits pursuant to Policy No. LAD060525.

**RESPONSE:**

**Interrogatory No. 9**

If the response for Request for Admission No. 5 is DENIED state each and every reason why Mr. Levy was not provided notice of his entitlement to receive Automatic Increase in Benefits pursuant to the Section of the Insurance Policy outlined above in Admission No. 5.

**ANSWER:**

**Request for Production of Documents No. 8**

If the response for Request for Admission No. 5 is ADMITTED produce all documents which relate and/or pertain to all notifications sent to Mr. Levy of his entitlement to receive an Automatic Increase in Benefit pursuant to the above delineated section of the Disability Policy.

**RESPONSE:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Interrogatory No. 10**

State the names and contact information for those UNUM employees who participated in determining whether or not the Automatic Increase in Benefit notices were sent to John Levy and received back from John Levy by UNUM.

**ANSWER:**

**Request for Production No. 9**

True and correct copies of all documents which relate and/or pertain to the Automatic Increase in Benefits sent by UNUM to John Levy as well as all letters sent back to UNUM by John Levy and/or any person acting on his behalf.

**RESPONSE:**

**Request for Production No. 10**

True and correct copies of all documents which relate to UNUM's Benefit Verification Department's review of John Levy's Automatic Increase and Benefits as well as any other additional benefits John Levy has on his UNUM Disability Policy.

**RESPONSE:**

**Request for Production No. 11**

True and correct copies of all documents which relate and/or pertain to any updated information on all of John Levy's benefits provided by UNUM's Verification Department.

**RESPONSE:**

**Request for Admission No. 6**

Admit or Deny that UNUM sent Spencer Edwards and/or John Levy updated information to John Levy's benefits pursuant to his UNUM disability policy.

**RESPONSE:**

**Interrogatory No. 11**

If the answer to Admission No. 6 is ADMIT what updated information was sent by UNUM's Benefits Verification Department to John Levy or any one acting on behalf of John Levy.

**RESPONSE:**

**Interrogatory No. 12**

Please describe in detail the updated information that was provided to John Levy and/or anyone acting on his behalf from the UNUM's Benefit Verification Department.

**ANSWER:**

Page | 10

First Set of Interrogatories, Request for Production
And Request for Admissions

**Interrogatory No. 13**

When did Daniel Pokraka, call Spencer Edwards regarding updated information he received from the Benefits Verification Department and what was did he relay to Spencer Edwards.

**ANSWER:**

**Request for Admission No. 7**

Admit or Deny that Mr. Levy purchased a disability income insurance policy (policy number LAD060525) from UNUM with an effective date of December 12, 1988.

**RESPONSE:**

**Request for Admission No. 8**

Admit or Deny that UNUM requested and Mr. Levy grant UNUM direct access and authority to draft all premiums from Mr. Levy's checking account leaving UNUM responsible for the collection of all of Mr. Levy's premiums.

**RESPONSE:**

**Request for Admission No. 9**

Admit or Deny that Mr. Levy first became disabled on July 13, 1991 from a diagnosis of depression.

**RESPONSE:**

**Request for Admission No. 10**

Admit or Deny that Mr. Rick Ruble on October 21, 1991 was an employee of UNUM.

**RESPONSE:**

**Request for Admission No. 11**

Admit or Deny that On October 21, 1991, Mr. Rick Ruble told John Levy that there must be a disabling condition for UNUM to pay benefits to Mr. Levy.

**RESPONSE:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 12**

Admit or Deny that Mr. Rick Ruble told Mr. Levy that UNUM would consider depression a disabling factor.

      **RESPONSE:**

**Request for Admission No. 13**

Admit or Deny that Mr. Rick Ruble told John Levy that depression would not be considered a long term disability.

      **RESPONSE:**

**Request for Admission No. 14**

Admit or Deny that Mr. Rick Ruble spoke with John Levy about return to work benefits equivalent to three months of disability benefits.

      **RESPONSE:**

**Request for Admission No. 15**

Admit or Deny that Mr. Rick Ruble told John Levy that return to work benefits would eliminate Mr. Levy's financial stress factors.

      **RESPONSE:**

**Request for Admission No. 16**

Admit or Deny that Mr. Rick Ruble assured Mr. Levy that Mr. Levy was not signing a release giving up any further rights and benefits.

      **RESPONSE:**

**Request for Admission No. 17**

Admit or Deny that a check from UNUM's home office was forwarded directly to Mr. Levy and that the payment represented benefits through January 12, 1992.

      **RESPONSE:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 18**

Admit or Deny that Mr. Levy agreed to a three month AP&C during the field visit with Mr. Rick Ruble.

**RESPONSE:**


**Request for Admission No. 19**

Admit or Deny that shortly after AP&C check was sent to Mr. John Levy his claim for depression was closed.

**RESPONSE:**

**Request for Admission No. 20**

Admit or Deny that once Mr. Levy accepted the ninety (90) day lump sum of "return to work benefit" his claim for depression and Waiver of Premiums ended.

**RESPONSE:**

**Request for Admission No. 21**

Admit or Deny that Mr. Levy's claim for depression closed effective January 12, 1992.

**RESPONSE:**

**Request for Admission No. 22**

Admit or Deny Joan Gerrish was an employee of UNUM on November 7, 1991.

**RESPONSE:**


**Request for Admission No. 23**

Admit or Deny that UNUM employee Joan Gerrish closed Mr. Levy's claim for depression on January 12, 1992.

**RESPONSE:**


**Request for Admission No. 24**

Admit or Deny that Mr. Levy agreed to a three month AP&C during Mr. Rick Ruble's field visit with Mr. Levy.

**RESPONSE:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 25**

Admit or Deny that shortly after Rick Rubles field visit with Mr. Levy on October 21, 1991 a check was issued by UNUM's home office and Mr. Levy's claim for depression was closed.

**RESPONSE:**

**Request for Admission No. 20**

Admit or Deny that on November 5, 1991 UNUM informed John Levy that to assure Mr. Levy's income protection is adequate that Mr. Levy's Automatic Plan withdrawal would include premiums for a guaranteed increase in Mr. Levy's monthly income benefit of $152.00 per month.

**RESPONSE:**

**Request for Admission No. 27**

Admit or Deny that UNUM informed Mr. Levy that the Guarantee Increase was available at a cost of only $6.53 per month.

**RESPONSE:**

**Request for Admission No. 28**

Admit or Deny that the withdrawal amount for Mr. Levy's Policy will be $102.12.

**RESPONSE:**

**Request for Admission No. 29**

Admit or Deny that UNUM told Mr. Levy that for his convenience that UNUM would begin automatic withdrawals of $102.12 from Mr. Levy's checking account in December 1991.

**RESPONSE:**

**Request for Admission No. 30**

Admit or Deny that UNUM informed Mr. Levy that if he did not wish to take advantage of this valuable offer that he should call UNUM at 1-800-227-8138.

**RESPONSE:**

**Request for Admission No. 31**

Admit or Deny that Mr. Levy never called or informed UNUM that he did not want to take advantage of the automatic increase in benefit of $152.00 a month.

**RESPONSE:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 32**

Admit or Deny that UNUM explained to Mr. Levy's that his prior premiums of $95.59 would be increased by $6.53 for a total of $102.12 establishing an additional guarantee increase by $152.00 in benefits.

**RESPONSE:**

**Request for Admission No. 33**

Admit or Deny that UNUM drafted Mr. Levy's checking account for premiums in the amount of $102.12, beginning January 12, 1992 when Mr. Levy's claim for depression had been closed, through March 14, 1992.

**RESPONSE:**

**Request for Admission No. 34**

Admit or Deny that UNUM drafted premium of $102.12 from Mr. Levy's checking account for the months of January, February and March of 1992.

**RESPONSE:**

**Interrogatory No. 13**
Why did UNUM draft premiums from Mr. Levy's checking account in the amount of $102.12 each month for January, February and March 1992?

**ANSWER:**

**Interrogatory No. 14**
State each and every reason why UNUM returned the $102.12 monthly premium that was prorated through March 1992.

**ANSWER:**

**Request for Admission No. 35**

Admit or Deny that the $102.12 premium included $95.59 for Mr. Levy's original premium plus an additional $6.53 for the guaranteed $152.00 increase in Mr. Levy's Monthly Disability benefits.

**RESPONSE:**

Page | 15

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 36**

Admit or Deny that UNUM decided that Mr. Levy's claim for depression was no longer a psych claim and that the diagnosis needed to be changed to AIDS.

**RESPONSE:**

**Request for Admission No. 37**

Admit or Deny that on February 11, 1992, Dr. Steve Martinez, Mr. Levy's physician, wrote a letter explaining that Mr. Levy had been diagnosed with Kaposi's Sarcoma and AIDS and had become permanently disabled on January 31, 1992.

**RESPONSE:**

**Request for Admission No. 38**

Admit or Deny that January 31, 1992 marked the onset date of Mr. Levy's second period of disability.

**RESPONSE:**

**Interrogatory No.  16**

If you Deny Response to Request No. 38, state each and every reason for denying Response to Admission No. 27.

**ANSWER:**

**Request for Admission No. 39**

Admit or Deny that Successive Disabilities are defined on page 8 of the Policy No.  LAD060525.

**RESPONSE:**

**Request for Admission No. 40**

Admit or Deny that on February 26, 1992, UNUM acknowledged Mr. Levy's second period of disability by explaining that he would again be entitled to a second Waiver of Premium Benefits.

**RESPONSE:**

**Request for Admission No. 41**

Admit or Deny that UNUM did not increase Mr. Levy's benefits to include the $152.00 per month.

**RESPONSE:**

Page | 16

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 42**

Admit or Deny that UNUM had guaranteed the increase in Automatic Increase in Benefits of $152.00 per month to Mr. Levy

    **RESPONSE:**

**Request for Admission No. 43**

Admit or Deny that Mr. Levy had paid for the increase and guaranteed amount of $152.00 a month.

    **RESPONSE:**

**Request for Admission No. 44**

Admit or Deny that UNUM only paid Mr. Levy the original amount $2,535.00 monthly through to the present date.

    **RESPONSE:**

**Request for Admission No. 45**

Admit or Deny that Mr. Levy was being paid $152.00 less per month than UNUM required to pay Mr. Levy.

    **RESPONSE:**

**Interrogatory No. 17**
If the answer to Admission No. 45 is Admit, state each and every reason why Mr. Levy was paid $152.00 less per month through the present date.

    **ANSWER:**

**Request for Admission No. 46**

Admit or Deny that that UNUM told Mr. Levy that he was not entitled to the Automatic Increase Benefit of 152.00 per month because the $152.00 benefit was not available to him due to the "Benefit Indexing Provision" found on page 8 and 9 of Policy No. LAD060525.

    **RESPONSE:**

**Request for Admission No. 47**

Admit or Deny that the Benefit Indexing Provision is only available "except during disability" which UNUM contends is inapplicable to Mr. Levy.

    **RESPONSE:**

Page | 17

First Set of Interrogatories, Request for Production
And Request for Admissions

**Interrogatory No. 18**

State each and every reason why Mr. Levy was told by UNUM that the Benefit Indexing Provision was inapplicable for Mr. Levy.

**ANSWER:**

**Request for Admission No. 48**

Admit or Deny that Mr. Daniel Pokraka was an employee of UNUM on April 12, 2018.

**RESPONSE:**

**Request for Admission No. 49**

Admit or Deny that Mr. Daniel Pokraka informed Spencer Edwards who was Mr. Levy's attorney at the time that he had reviewed UNUM's records and Mr. Levy was not eligible to receive benefit on his current claims.

**RESPONSE:**

**Request for Admission No. 50**

Admit or Deny that on June 14, 2018, UNUM sent another letter which denied Mr. Levy of the Automatic Increase Benefit of $152.00.

**RESPONSE:**

**Request for Admission No. 51**

Admit or Deny that it is UNUM's position that Mr. Levy wasn't eligible to receive the additional $152.00 benefit because his claim has been continuous.

**RESPONSE:**

**Request for Admission No. 52**

Admit or Deny that Mr. Levy had satisfied all of the Policy Provisions which would have qualified him for the additional $152.00 in benefits beginning on or about April 15, 1992 through to the present day.

**RESPONSE:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Interrogatory No. 19**

State each and every reason how Mr. Levy could have known that the acts of UNUM caused him damage.

**ANSWER:**

**Interrogatory No. 20**

State each and every reason how Mr. Levy should have known that the acts of UNUM caused him damage.

**ANSWER:**

**Request for Admission No. 53**

Admit or Deny that the Benefit Indexing Provision, on page 8 the Policy No. LAD060525 would automatically provide Mr. Levy to increase the Maximum Disability Benefit by the index amount.

**RESPONSE:**

**Request for Admission No. 54**

Admit or Deny that UNUM failed to automatically increase Mr. Levy benefits by the indexed amount on the anniversary of his policy, December 14, 1989 and December 14, 1990.

**RESPONSE:**

**Request for Admission No. 55**

Admit or Deny that Mr. Levy never received notification of his eligibility for the Automatic Benefit Indexing Provision.

**RESPONSE:**

**Interrogatory No. 21**

If you admit to Request for Admission No. 42 state each and every reason why Mr. Levy did not receive notification of his eligibility for the Automatic Benefit Indexing Provision on Page 9 of Policy No. LAD060525.

**ANSWER:**

First Set of Interrogatories, Request for Production
And Request for Admissions

**Request for Admission No. 56**

Admit or Deny that UNUM received the Demand Letter dated September 15, 2021 attached hereto as Exhibit 1.

**RESPONSE:**

**Request for Admission No. 57**

Admit or Deny that UNUM failed to respond to Exhibit No. 1.

**RESPONSE:**

**Interrogatory No. 22**

If you admit to Request for Admission No. 57 state each and every reason why UNUM failed to respond to Exhibit No. 1.

**ANSWER:**

**Interrogatory No. 23**

What amount in dollars have you offered to settle Mr. Levy's claims contained in Exhibit No. 1 from the date of receipt of Exhibit No. 1 by UNUM.

**ANSWER:**

**Interrogatory No. 24**

State each and every defense that UNUM has to Mr. Levy's claims he made against UNUM in Exhibit No. 1.

**ANSWER:**

**Interrogatory No. 24**

State each and every reason why Mr. Levy did not receive notification of his eligibility for the Benefit Indexing Provision.

**ANSWER:**

First Set of Interrogatories, Request for Production
And Request for Admissions

EXHIBIT "A"

# WILSON & ASSOCIATES, P.C.

### A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

2100 WEST LOOP SOUTH, SUITE 1125

HOUSTON, TEXAS 77027

stuartwilson@swilsonpc.com

713.479.9700                                        FAX: 713.871.9820


September 15, 2021


By Federal Express
Mr. Richard McKenney, Individually
Mr. Richard McKenney, President
UNUM Group
1 Fountain Square
Chattanooga, Tennessee  37402

      RE:    John Levy – Policy No. LAD060525

Dear Mr. McKenney:

Our firm has been retained by Mr. John Levy who is the owner and holder of UNUM Disability Policy No. LAD060525.  The effective date of the policy is December 12, 1985.  Pursuant to the terms and conditions of said policy Mr. Levy was to receive Automatic Increases in Benefits. Mr. Levy first became disabled on July 13, 1991 for Depression.  He received benefits pursuant to the Residual Disability Section for a period of three months of $2,535.00 per month.  The total benefits he received was $7605.00 representing Mr. Levy's benefits through January 12, 1992.  When said period of Residual Disability ceased, and his file closed, Mr. Levy was subsequently determined by UNUM to be permanently disabled as of January 31, 1992 with a diagnosis of full blown AIDS/Karposi Sarcoma.

Mr. Levy was also entitled to an Automatic Increase in Benefit pursuant to Section Successive Disabilities as defined on Page 8 of the policy.  More specifically:

> *"A period of disability which follows a past period of disability will be considered a separate period of disability only if the subsequent period of disability is:*
>
> *1. caused by a different injury or sickness than the one which caused the past period of disability; or*
>
> *2. separated from the past period of disability by at least six months during which the insured is able to return to work full time in his regular occupation."*

Mr. Richard McKenney, Individually
Mr. Richard McKenney, President
UNUM Group
September 15, 2021
Page 2

Mr. Levy's second disability claim clearly satisfied the requirement of #1 above because Mr. Levy had been disabled "for a different injury or sickness".  In this case Depression vs HIV/AIDS.

UNUM failed to increase his monthly benefit to include an amount of $152.00 per month despite having automatically withdrawn an additional premium sum of $6.53 from his bank account. Throughout the years Mr. Levy would contact UNUM with regard to determine whether or not he was entitled to the $152.00 increase in benefits.   However, each time he was met with the following reason from UNUM for not increasing monthly benefit.  *"The Automatic Increase of Benefit of $152.00 did not take effect until December 12, 1991 which was after Mr. Levy's date of disability after July 13, 1991 being that his claim for disability has been continuance"*.

In addition, UNUM failed to provide Mr. Levy notice of his entitlement to an additional Automatic Increase in Benefit.   According to the policy provisions the Index Amount is defined on page 9 as:

> *"The increase available each year will be the percent change in the CPI-U between November 30 in the previous calendar year and November 30 of the calendar year before that one or 8%, whichever is smaller, times the current Maximum Disability Benefit for the policy. If the change in the CPI-U is less than 4%, the increase available will be 4% of the current Maximum Disability Benefit."*

Still not understanding why he was not receiving his Automatic Increase of Benefit of $152.00 per month he retained the services of my firm.  I suggested that Mr. Levy obtain a full and complete copy of his UNUM disability file.  I explained that hopefully that the contents of the file would reveal whether or not he actually had a viable claim to receive Automatic Increases in Benefits.  He subsequently made the request and received 1,936 pages on August 10, 2020.  UNUM represented that these documents were his full and complete UNUM Disability Policy file.  In review of his file there were many internal records and documents of which Mr. Levy was not privy or aware.  These internal documents revealed that UNUM knew all along that Mr. Levy was entitled to the $152.00 increase in benefits.  My firm subsequently retained Rebecca Freeman, an expert in the field of denial of insurance claims.  She reviewed the contents of Mr. Levy's UNUM Disability Policy file, Texas Statutes and case law.  Ms. Freeman prepared an expert report which is attached hereto.  As part and parcel of her report is attached documents she relied on in determining her expert opinion.  Besides the documents attached to the report is a calculation of Mr. Levy's damages.  As a result of the actions of UNUM, its employees, officers and directors it is Ms. Freeman's opinion that they breached the contract, committed fraud, was negligence/negligence supervision, and violated the Texas Deceptive

Mr. Richard McKenney, Individually
Mr. Richard McKenney, President
UNUM Group
September 15, 2021
Page 3

Trade Practices Act as well as the Texas Insurance Code.  According to Ms. Freeman Mr. Levy suffered actual damages.

In addition, Ms. Freeman also opined that the actions of UNUM, its employees, officers and directors were unconscionable and in breach of their fiduciary duty and failed to deal with Mr. Levy in good faith and fair dealing.  As a result, he is entitled to recover punitive and exemplary damages as well as attorney's fees.

As such, Mr. Levy demands that he receive from UNUM its employees, officers and directors jointly and severally the sum of $4,780.827.29 as actual damages, the sum of $4,780.827.29 as punitive and exemplary damages and the sum of $1,500,000.00 as attorney's fees and costs.

Mr. Levy and I are amenable to mediate this case to a final resolution within the next thirty (30) days.  If it is not settled by then, our plan is to file the attached Plaintiff's Original Petition, seeking recovery from UNUM, its employees, officers and directors pursuant to the causes of action plead for in Plaintiff's Original Petition.  I have attached a copy of Plaintiff's Original Petition along with the Request for Production, First Set of Interrogatories, Request for Admissions and Request for Disclosure which will be attached to Plaintiff Original Petition when it is filed with the Court.  Please note that if the case is not settled, Mr. Levy's damages will increase by approximately $1,000,000.00 per year.  I am attaching a calculation of those additional damages for that one year period.

I am open to having a constructive conversation with you or a representative on your behalf and respond to any questions or listen to any comments you might have.  Hopefully this matter can be resolved sooner than later.

Sincerely,

/s/ Stuart N. Wilson

Stuart N. Wilson

SNW:aam
Encl:  As stated above

CAUSE NO. _____

| | | |
|---|---|---|
| JOHN LEVY | § | IN THE DISTRICT COURT OF |
| | § | |
| v. | § | HARRIS COUNTY, T E X A S |
| | § | |
| UNUM GROUP, | § | _____ JUDICIAL DISTRICT |

### PLAINTIFFS' REQUEST FOR DISCLOSURE

TO:    UNUM Group,

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you are requested to disclose, within fifty days after service of this request, the information or material described in Rule 194 as set forth in the attached request. The originals or copies of documents and other tangible items requested must be produced for inspection and copying at the law offices of Wilson & Associates, P.C., 2100 West Loop South, Suite 1125, Houston, Texas 77027, within fifty days after service of this request, together with a written response. Each written response must be preceded by the request to which it applies. No objection or assertion of work product privilege is permitted to a request under this rule. If you fail to comply with this request, the court may order sanctions against you in accordance with the Texas Rules of Civil Procedure.

Respectfully submitted,

**WILSON & ASSOCIATES, P.C.**

*/s/ Stuart N. Wilson*

STUART N. WILSON
TBC #21723300
2100 West Loop South, Suite 1125
Houston, Texas  77027
Phone: (713) 479-9700
Facsimile: (713) 871-9820
**ATTORNEY FOR PETITIONER**

Request for Disclosures

1

## <u>RULE 194 REQUEST FOR DISCLOSURE</u>

1.      State the correct names of the parties to the lawsuit.

2.      State the names, addresses, and telephone numbers of any potential parties.

3.      State the legal theories and, in general, the factual bases of the claims or defenses.

4.      State the amount and any method of calculating economic damages.

5.      State the names, addresses, and telephone numbers of persons having knowledge of relevant facts, and give a brief statement of each identified person's connection with the case.

6.      For any testifying expert -

        a.      state the expert's name, address, and telephone number;

        b.      state the subject matter on which the expert will testify;

        c.      state the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them or, if the expert is not retained by, employed by, or otherwise subject to the control of Plaintiff, documents reflecting such information;

        d.      if an expert is retained by, employed by, or otherwise subject to the control of Plaintiff, produce the originals or copies of the following:

                i.      all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

                ii.      the expert's current resume and bibliography.

7.      Produce the originals or copies of any indemnity and insuring agreements described in rule 192.3(f) of the Texas Rules of Civil Procedure. Rule 192.3(f) provides as follows:

> *Indemnity and Insuring Agreements.* Except as otherwise provided by law, a party may obtain discovery of the existence and contents of any indemnity or insurance agreement under which any person may be liable to satisfy part

2

or all of a judgment rendered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

8.      Produce the originals or copies of any settlement agreements described in rule 192.3(g) of the Texas Rules of Civil Procedure.  Rule 192.3(g) provides as follows:

> *Settlement Agreements.* A party may obtain discovery of the existence and contents of any relevant portions of a settlement agreement.

9.      Produce the originals or copies of any witness statements described in rule 192.3(h) of the Texas Rules of Civil Procedure. Rule 192.3(h) provides as follows:

> *Statements of Persons with Knowledge of Relevant Facts.* A party may obtain discovery of the statement of any person with knowledge of relevant facts—a "witness statement"—regardless of when the statement was made. A witness statement is (1) a written statement signed or otherwise adopted or approved in writing by the person making it, or (2) a stenographic, mechanical, electrical, or other type of recording of a witness's oral statement, or any substantially verbatim transcription of such a recording. Any person may obtain, upon written request, his or her own statement concerning the lawsuit, which is in the possession, custody or control of any party.

10.     Produce the originals or copies of all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

11.     Produce the originals or copies of all medical records and bills obtained by Defendants by virtue of an authorization furnished by Plaintiff.

12.     The name, address, and telephone number of any person who may be designated as a responsible third party.

3

# EXHIBIT 5

12/14/2021 4:39:34 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 60024806
By: GILBERT, COURTNI N
Filed: 12/14/2021 4:39:34 PM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

## Request for Issuance of Service

**CASE NUMBER:** _____   **CURRENT COURT:** _____

**Name(s) of Documents to be served:** **ORIGINAL PETITION** _____

**FILE DATE:** ____12-14-2021_____ Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**: **UNUM GROUP** _____

Address of Service: **Corporation Services Company, 211 East 7th Street, Suite 620** _____

City, State & Zip: **Austin, Texas, 78701** _____

Agent (if applicable) _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

☑ **Citation**     ☐ **Citation by Posting**     ☐ **Citation by Publication**     ☐ **Citations Rule 106 Service**

☐ **Citation Scire Facias     Newspaper**_____

☐ **Temporary Restraining Order**     ☐ **Precept**     ☐ **Notice**

☐ **Protective Order**

☐ **Secretary of State Citation ($12.00)**     ☐ **Capias** (not by E-Issuance)     ☐ **Attachment** (not by E-Issuance)

☐ **Certiorari**     ☐ **Highway Commission ($12.00)**

☐ **Commissioner of Insurance ($12.00)**     ☐ **Hague Convention ($16.00)**     ☐ **Garnishment**

☐ **Habeas Corpus** (not by E-Issuance)     ☐ **Injunction**     ☐ **Sequestration**

☐ **Subpoena**

☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** (*check one*):
☐ **ATTORNEY PICK-UP (phone)** _____     ☑ **E-Issuance by District Clerk**
☐ **MAIL to attorney   at:** _____     **(No Service Copy Fees Charged)**
☐ **CONSTABLE**     *Note*: The email registered with EfileTexas.gov must be
☐ **CERTIFIED MAIL by District Clerk**     used to retrieve the E-Issuance Service Documents.
Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

☐ **OTHER**, *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name:  __Stuart N. Wilson__   Bar # or ID __21723300__

Mailing Address:**2100 West Loop South, Suite 1125, Houston, Texas 77027**

Phone Number:  **(713) 479-9700**

# EXHIBIT 6

Filed 21 December 21 A10:56
Marilyn Burgess - District Clerk
Harris County

Cause No. 202181359

LEVY, JOHN                                         IN THE DISTRICT COURTS OF

V.                                                 HARRIS COUNTY, TEXAS

UNUM GROUP                                         295 JUDICIAL DISTRICT


TRANSFER ORDER

It is ORDERED that the Harris County District Clerk transfer the above styled and numbered cause from the 295 District Court to the 334 District Court.


SIGNED Monday, December 20, 2021

HON. MICHAEL GOMEZ
ADMINISTRATIVE JUDGE
CIVIL TRIAL DIVISION


Attraction Cause Number 201851402

LEVY, JOHN

v.

UNUM CORPORATION

File Court 334

JUDGMENT DATE: 5/20/2019              JUDGMENT TYPE: DISMISSED FOR WANT OF PROSECUTION

CASE TYPE: Debt/Contract – Consumer/DTPA